UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERIZON TRADEMARK SERVICES LLC<br><br>              Plaintiff,<br><br>   v.<br><br>VERIZON TRADEMARK SERVICES LLC, *et al.*,<br><br>              Defendants. | Case No. 23-CV-2750 (JMC) |

## MEMORANDUM OPINION

Plaintiff Verizon Trademark Services LLC (Verizon) moves for default judgment on its cybersquatting and trademark infringement claims against Defendant Verizon Trademark Services LLC (VTS LLC). ECF 9. Verizon's motion remains unopposed given VTS LLC's absence from this case. Upon consideration of the motion, and for the reasons set out below, the Court **GRANTS IN PART** and **DENIES IN PART** Verizon's Motion for Default Judgment. Specifically, the Court has modified Verizon's requested injunction to ensure that third parties, who are neither subject to this Court's jurisdiction nor alleged to have acted in concert with Defendants, do not have obligations under the Court's order.[1]

**I.  BACKGROUND**

Plaintiff owns the trademark and trade name VERIZON and licenses the use of the mark to its parent company and other Verizon companies and affiliates. ECF 1 ¶ 23. Per the Complaint, VTS LLC—under the exclusive control of its "sole organizer and contact," Co-Defendant Matt

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

McMan—registered multiple infringing domain names and trade names as part of a scheme to mislead consumers, damage the VERIZON mark, and extort Verizon. *Id.* ¶¶ 10, 67–68, 96–100. As early as April 2023, the various named Defendants (including VTS LLC), through McMan, began registering domains that derived from or incorporated trademarks owned by Verizon, which prompted Verizon to send cease-and-desist letters objecting to the unauthorized use of its trademarks. *Id.* ¶¶ 41, 44, 72. In response, Defendants doubled down, registering additional domain names (as well as trade names) incorporating the entirety of the VERIZON mark or other marks owned by Plaintiff. *Id.* ¶¶ 45, 73–74, 77, 83–84. When registering the domains at issue, Defendants often did so anonymously, using "a popular domain privacy service" known as "Domains By Proxy." *Id.* ¶¶ 42, 103.

At the height of this misconduct, VTS LLC drafted a "Complaint" alleging that *Plaintiff* was misleading consumers. *Id.* ¶ 94. This same document also boasted that Plaintiff "Can't Even Get a DBA in Washington, DC for 'Verizon Trademark Services' LLC because . . . Verizon Trademark Services LLC Owned By Matt McMan Will NOT Grant 'Verizon' written Consent." ECF 1-10 at 4. On multiple occasions, Defendant sent versions of this "Complaint" to Plaintiff and government officials in a coercive attempt to sell or license these marks to Verizon. *See* ECF 1 ¶¶ 88, 94, 100; ECF 1-11; ECF 1-12; ECF 1-13. When Verizon resisted those efforts, Defendants promptly registered even more domains incorporating the VERIZON mark. ECF 1 ¶ 103. As of today, several of Defendants' domains "do[] not, and ha[ve] never, resolved to an active website" or are "parked webpage[s]" with sponsored links for services, while other domains resolve to websites containing "false information accusing Verizon of engaging in 'shell company fraud.'" *See, e.g.*, *id.* ¶¶ 71, 79, 81, 95, 105.

Plaintiff filed suit on September 20, 2023. ECF 1. The docket reflects that Plaintiff properly served VTS LLC's registered agent on September 26, 2023. ECF 5. Defendant was required to file its response by October 17, 2023 but did not do so. To date, neither VTS LLC nor any other named Defendant has entered an appearance. On November 1, 2023, Verizon filed a request for entry of default, and the Clerk of the Court entered default the following day. ECF 6; ECF 7. Verizon now voluntarily dismisses four of its seven claims against VTS LLC and seeks a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against VTS LLC on the following three causes of action: cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d); trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); and trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). ECF 9 at 6; ECF 1 ¶¶ 112–23, 132–43. For the Lanham Act violations, Plaintiff seeks injunctive relief against VTS LLC prohibiting it from using the VERIZON Mark in any form. ECF 9 at 13–14. For the ACPA violations, Plaintiff requests further injunctive relief and $450,000 in statutory damages, i.e., $50,000 per domain name for 9 infringing domains:

(1) VERIZONTRADEMARK.COM;
(2) VERIZONSHELLCOMPANY.COM;
(3) VERIZONSHELLCOMPANIES.COM;
(4) VERIZONIP.COM;
(5) VERIZONSETTLEMENTS.COM;
(6) VERIZONINVESTIGATION.COM;
(7) VERIZON.COM.CO;
(8) VERIZONTRADEMARKSERVICESLLC.COM; and
(9) VERIZONTRADEMARKS.COM.

ECF 9 at 9–10, 12–13.

The Court heard oral argument from Verizon's counsel on December 12, 2023 as to the remedies Verizon is seeking, and Plaintiff provided supplemental authority in support of its motion on December 13, 2023, ECF 14. The Court is now prepared to rule on the motion.

## II. DISCUSSION

Upon default, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). In general, "[in] the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). Nonetheless, "[t]he determination of whether a default judgment is appropriate is committed to the discretion of the trial court," *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011), and the Court must "make an independent determination of the sum to be awarded unless the amount of damages is certain." *Amrine Drywall Co.*, 239 F. Supp. 2d at 30.

Here, the Court finds that Plaintiff's complaint alleges sufficient facts to establish liability on the cybersquatting and trademark infringement claims for which it seeks default judgment, that Plaintiff's request for statutory damages in the amount of $50,000 per unlawful domain is reasonable, and that a permanent injunction is appropriate. However, the Court will modify or remove certain terms of Verizon's proposed injunction to avoid enjoining third parties who are neither subject to this Court's jurisdiction nor alleged to be "in active concert or participation" with Defendants. Fed. R. Civ. Pro. 65(d)(2)(C).

### A. Liability

As an essential preliminary matter, the Court finds that it has both subject matter jurisdiction and personal jurisdiction over the defaulting Defendant. Because Plaintiff's claims arise under federal trademark law, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). And because VTS LLC is a District of Columbia

limited liability company, ECF 1 ¶ 7, this Court has personal jurisdiction over Defendant as well. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Court now turns to the merits.

To prevail on its ACPA claim, "Plaintiff must demonstrate that: (1) its trademark is a distinctive or famous mark entitled to protection; (2) Defendants' domain name is identical or confusingly similar to the Plaintiff's mark; and (3) Defendants 'register, traffic in, or use' a domain name with the bad faith intent to profit from it." *Hanley-Wood LLC*, 783 F. Supp. 2d at 152 (quoting 15 U.S.C. § 1125(d)(1)(A)). On the first two elements, Plaintiff has pled facts establishing that it owns the federally registered VERIZON mark, that the mark is entitled to protection, and that VTS LLC's domain names are confusingly similar. *See, e.g.*, ECF 1 ¶¶ 11, 23–27, 29–32, 113–15. As to the final element, Plaintiff has alleged that VTS LLC has no rights in the VERIZON mark, that VTS LLC's domains incorporate the mark in its entirety, that the infringing domains are not used in connection with any legitimate or bona fide business operations, and that VTS LLC continued to register additional infringing domains despite having no right to do so and despite knowing of Plaintiff's objections. *See, e.g.*, ECF 1 ¶¶ 70–71, 79–84, 100, 117–19. These allegations are sufficient to establish that Defendant registered, trafficked in, or used the infringing domain names with a bad faith intent to profit. *See* 15 U.S.C. § 1125(d)(1)(B)(i) (listing factors relevant to finding of bad faith). Plaintiff has therefore succeeded by default on the merits of its ACPA claim as to all nine domain names.

To prevail on its trademark infringement and false designation of origin claims, Plaintiff must establish "that [it] owns a valid trademark, that [the mark] is distinctive or has acquired a secondary meaning, and that there is a likelihood of confusion." *Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012), *aff'd*, No. 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012). Verizon brings claims under both 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a), and both

5

"are measured by the same standards under the Lanham Act, although the former section requires registration of the mark at issue, while the latter does not." *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 29 (D.D.C. 2008). As described already, Plaintiff has alleged facts establishing that it is the owner and registrant of the VERIZON mark, that the mark is distinctive and has acquired secondary meaning, and that the Defendant's use of the mark is likely to cause confusion. *See, e.g.*, ECF 1 ¶¶ 11, 23–27, 29–32, 113–15. Verizon is thus entitled to a default judgment on its Lanham Act claims for trademark infringement and false designation of origin.

### B. Statutory Damages

Plaintiff has elected to seek statutory damages rather than actual damages, and this Court is authorized to award statutory damages from $1,000 to $100,000 for each unlawful domain name. 15 U.S.C. § 1117(d). "Courts have substantial discretion in awarding statutory damages," *Hanley-Wood LLC*, 783 F. Supp. 2d at 153, though in the default context courts are often "hesitant to apply the maximum penalty," *see, e.g.*, *Verizon Calif. Inc. v. OnlineNIC Inc.*, No. C 08-2832, 2008 WL 5352022, at *2 (N.D. Cal. Dec. 19, 2008). In fixing an appropriate award, courts consider factors including, but not limited to: the egregiousness or willfulness of the cybersquatting, the probable degree of consumer deception and harm, and the number of infringing domains registered in violation of the Plaintiff's (or others') intellectual property rights. *See, e.g.*, *Verizon Calif. Inc. v. Onlinenic, Inc.*, No. C 08-2832, 2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009); *Bittorrent, Inc. v. Bittorrent Marketing GMBH*, No. 12-cv-2525, 2014 WL 5773197, at *11–12 (N.D. Cal. Nov. 5, 2014). After reviewing the relevant factors, the Court finds that Verizon's request for $50,000 per domain is reasonable.

The Court acknowledges that some considerations work in VTS LLC's favor. As to the number of infringing domains, for example, Verizon seeks compensation for nine domains. In a world where cybersquatters may crank out infringing domains by the dozens or even hundreds, however, this factor is not as strong as Plaintiff suggests. *See Verizon Cal. Inc*, 2008 WL 5352022, at *2 (awarding $50,000 per domain for 663 unlawful domains). And in terms of the actual content associated with these domains, Defendant's websites bear virtually no resemblance to Plaintiff's. *Compare, e.g.*, ECF 1 ¶ 79 ("VERIZONTRADEMARK.COM . . . redirects to a website featuring an incomplete Shopify online store."), *with* Home Page, VERIZON (2023), www.verizon.com (displaying complete, interactive website with polished offers for electronics, internet, and cell phone services). As such, relative to more sophisticated cybersquatting schemes, the Court finds it less likely that consumers would actually lose money thinking that these poorly made websites were a legitimate product of Verizon. *Cf. Facebook, Inc. v. Banana Ads LLC*, No. CV 11-3619, 2013 WL 1873289, at *16 (N.D. Cal. Apr. 30, 2013) (doubling damages where "landing websites were designed to deceive users into believing that they were on Facebook's official website").

That said, the Court finds that VTS LLC's blatant, unabashed, and repeated attempts to harm Verizon through cybersquatting justifies Verizon's request for $50,000 per domain. Point blank, Defendant's conduct "smacks of bad faith." *Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1203 (C.D. Cal. 2014). When Defendant received notice that Verizon objected to its conduct, Defendant responded by registering even more infringing domains. When crafting its unlawful domains, Defendant did not engage in mere "typosquatting," but instead incorporated the entire, "identical spelling" of the VERIZON mark. *See Bittorrent*, 2014 WL 5773197, at *4 n.6, *12. When registering these domains, Defendant often did so anonymously, likely "to avoid detection." *See Verizon Cal. Inc.*, 2008 WL 5352022, at *2. Once Defendant had claimed these domains, it

7

used them to publish disparaging statements directed at Verizon. *See eAdGear, Inc. v. Liu*, No. CV-11-05398, 2012 WL 2367805, at *2 (N.D. Cal. June 21, 2012). And perhaps most egregiously, when interacting with Plaintiff, Defendant threatened frivolous legal action and attempted to sell Plaintiff's intellectual property back to itself, *see CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1102–03 (D. Colo. 2014), all the while decrying Plaintiff as a purportedly fraudulent "shell company" and falsely claiming that Plaintiff had no right to use its own trademarks, *see Curtis*, 45 F. Supp. 3d at 1203.

On balance, even in the context of default, where the Court and the Parties are deprived of the truth-seeking benefits of an adversarial proceeding, statutory damages in the amount of $50,000 per domain is reasonable in this case. Verizon shall therefore be awarded a total of $450,000 in damages. The Court turns next to Plaintiff's request for injunctive relief.

## C. Injunctive Relief

Plaintiff seeks a variety of equitable relief under the Lanham Act to prevent future infringement and effectuate prompt transfer of the infringing domains to Verizon. "In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the merits, (2) whether the plaintiff[] will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the injunction." *ACLU v. Mineta*, 319 F. Supp. 2d 69, 87 (D.D.C. 2004). Here, Plaintiff has succeeded on the merits by default, and trademark infringement generally, "by its very nature, carries a presumption of harm." *Hanley-Wood LLC*, 783 F. Supp. 2d at 151. The Court also finds that an injunction would not harm others and that the public interest is best served by protecting

against further trademark violations. Plaintiff is therefore entitled to a permanent injunction as requested in its motion, but the Court now must determine what that injunction should look like.

Under the Lanham Act, this Court may issue an injunction "upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Plaintiff requests this Court to enjoin VTS LLC from:

1. Using and/or registering on or for any websites or any products or services, in any style or form, and in any manner, the trademark VERIZON and any trademarks, product and service names, domain names, corporate names, business names, trade names, logos, favicons, e-mail addresses, website titles, website addresses and URLs, social media names, screen names, metatags, keywords, or any other marks, names, or identifiers that contain Plaintiff's VERIZON name or mark including, without limitation, (a) the Infringing Domain Names, (b) the infringing trade names "Verizon Trademark Services LLC," "Verizon Trademark Services," or "Verizon," [] and (c) any phonetically equivalent terms and typos of such terms (collectively, the "Prohibited Names");

2. Using and/or registering with any state or local agency any corporate name, business name, or trade name that contains in whole or in part Plaintiff's VERIZON name or mark including, without limitation, the Prohibited Names;

3. Using, registering, selling, acquiring, transferring, releasing, deleting, and/or assigning any of the Infringing Domain Names and any other domain names that contain Plaintiff's VERIZON name or mark;

4. Representing or suggesting by any means whatsoever, directly or indirectly, that Defendant, any product or service offered, promoted, or rendered by Defendant, any website owned, operated, or controlled by Defendant, or any activities undertaken by Defendant, come from Plaintiff, are affiliated with Plaintiff in any way, or are otherwise endorsed or sponsored by Plaintiff; and

5. Assisting, aiding, or abetting any other person or business entity in engaging in, performing, or rendering any activities or services prohibited by any of Paragraphs 1–4 above.

ECF 9-1 at 2–3.

Plaintiff further requests that this Court order Defendant to cancel all registrations and filings using any of the infringing names for any corporate, trade, or "other business names." *Id.*

9

at 3. Given Defendant's egregious and willful trademark infringement, the Court does not hesitate to find that the terms of Plaintiff's proposed injunction against VTS LLC are reasonable.

The Court must pause, however, to address Plaintiff's requests for injunctive relief against entities that are not party to this case. Plaintiff makes three requests of this sort: (1) "that the domain name registries, registrars, and privacy or proxy services [(hereinafter, the registrars)] for the Infringing Domains immediately transfer all such domain names to Plaintiff," (2) that the registrars immediately transfer ownership and disclose Defendant's contact information "if Defendant uses, registers, or otherwise acquires any additional [infringing] domain name(s)," and (3) "that the website hosting providers for any [infringing] websites that Defendant owns, operates, controls, or uses now or in the future . . . immediately terminate all of the hosting services for all such websites and shut down such websites." ECF 9-1 at 3–4. The Court does not find that any of the three requests is appropriate.

Courts have long observed, in a variety of contexts, a "general rule against binding nonparties." *Smith v. Bayer Corp.*, 564 U.S. 299, 308 (2011). "It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 188 F. Supp. 3d 22, 120 (D.D.C. 2016) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969)). In circumstances where exceptions to this rule are permitted, the Court's ability to decide "which non-parties are bound by [an] injunction is necessarily as broad as (though no broader than) the non-party provisions in Fed. R. Civ. P. 65(d)(2)(B)–(C)." *WMATA v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23, 30 (D.D.C. 2013) (citing *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1136 (D.C. Cir. 2009)). Under Rule 65(d)(2), in addition to named parties and their agents, an injunctive order

binds only those "persons who are in active concert or participation" with the aforementioned groups. In other words, those who "aid[] or abet[] an enjoined party in violating the injunction" or are "in privity with an enjoined party." *Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010).

Turning to Plaintiff's requests for injunctive relief against the registrars, the Court will now explain why it must deny these requests. Verizon seeks an order compelling the registrars to transfer the infringing domains plus any "additional [infringing] domain[s]" that Defendant might register in the future. ECF 9-1 at 3–4. To Verizon's credit, it is irrefutable that the ACPA allows "a court [to] order the forfeiture or cancellation of the domain name of the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C). The issue is that this provision is silent as to whether non-party registrars (or any entity not named as a defendant for that matter) ought to be bound by such an order. Yet after applying "the cardinal rule that a statute is to be read as a whole," *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991), the answer becomes clear: there is no indication in the ACPA that Congress intended to authorize third-party injunctions, let alone injunctions requiring third parties to forever police unlawful conduct that might occur in the future. In fact, the statute suggests the opposite.

The text and structure of the ACPA counsel against granting Plaintiff's request to enjoin the registrars. For purposes of in rem actions, for example, Congress provided courts with the limited authority to order registrars to "expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name . . . and not transfer, suspend, or otherwise modify the domain name during the pendency of the action" (lest the Court lose its basis for jurisdiction). 15 U.S.C. § 1125(d)(2)(D)(i). Congress plainly did not expand that authority any further seeing as, unless the registrars act with "bad faith or reckless disregard" in these actions, "[t]he domain name registrar

11

or registry or other domain name authority *shall not be liable* for injunctive or monetary relief." *Id.* § 1125(d)(2)(D)(ii) (emphasis added). Moreover, a court is only empowered to order "the transfer of *the* domain name," i.e., the one proven in court to have been unlawfully "register[ed], traffic[ked] in, or use[d]" by the defendant. 15 U.S.C. § 1125(d)(1)(A)(ii), (d)(1)(C) (emphasis added). It does not empower a court to order the transfer of a domain that does not yet exist. Plus, as a practical matter, to the extent Verizon is concerned about potential future violations, "Defendant will already be enjoined from registering additional trademarked or confusingly similar domain names." *Bittorrent, Inc.*, 2014 WL 5773197, at *14.

Plaintiff's reliance on caselaw outside of this circuit does not establish that its request to enjoin the registrars is "in accordance with Fed. R. Civ. P. 65(d)(2)(A)–(C)." *Contra* ECF 14 at 2. Verizon points to other districts that have issued third-party injunctions against registrars, concluding that such relief is authorized as "necessary to effectuate the purposes of the injunction," *see, e.g.*, *eAdGear, Inc.*, 2012 WL 2367805, at *17, but the Court is not convinced. For starters, the caselaw from other districts does not uniformly support Verizon. *See, e.g.*, *Rylee & Cru, Inc. v. Zhu*, No. 23-CV-120, 2023 WL 355945, at *6 (D. Colo. Jan. 23, 2023) ("Because R&C has alleged only inactivity on the part of Name.com, the Court finds that it may not bind the registrar to the terms of the TRO order under Rule 65(d)(2)(C)."); *BMW of N. Am., LLC v. Issa*, No. 2:19-CV-220, 2020 WL 1325278, at *6 (D. Utah Mar. 20, 2020) (similar). Indeed, some of Verizon's own cases (submitted in ECF 14) directly undermine its request, *see, e.g.*, *Curtis*, 45 F. Supp. 3d at 1204 ("[T]he Court declines to issue the Order directly to the domain-name registrars."), while others are distinguishable insofar as the courts issuing such injunctions did so only after finding that the registrars "[we]re 'in active concert or participation' with [defendant's] infringing activities" or that, at minimum, the registrars "ha[d] not objected" after receiving actual notice of

the requested order, *see, e.g.*, *DISH Network, L.L.C. v. Dima Furniture Inc.*, No. 17-3817, 2019 WL 2498224, at *9 (D. Md. June 17, 2019).

Regardless of the holdings from other districts—which are not binding on this Court anyway—an injunction against the registrars is inappropriate here because this Court does not find, nor has Plaintiff alleged, that the registrars are in privity with VTS LLC or that they have aided and abetted VTS LLC's misconduct. The registrars are not party to this proceeding, they are not agents or officers of Defendant, they have not yet obstructed any domain transfer, and they cannot have been on notice of a judicial order declaring VTS LLC's conduct unlawful because such an order did not exist prior to today.[2] As such, the registrars fall outside the ambit of Rule 65(d)(2), and the Court declines to issue an order that hangs the coercive threat of contempt above their heads. *See* 15 U.S.C. § 1116(a) (injunctions "shall be operative and may be enforced by proceedings to punish for contempt"). Instead, the Court will issue an order that, in conjunction with an injunction against VTS LLC requiring it to transfer infringing domains to Verizon, will authorize the registrars to transfer the domains to Verizon "at Plaintiff's request and upon being provided a copy of this order, whether or not Defendant has authorized the transfer." *Cf. Bittorrent, Inc.*, 2014 WL 5773197, at *14. This modification, along with the other comprehensive terms of the injunction, leaves Verizon well protected against any continued harm from VTS LLC without exceeding the bounds of this Court's authority. At bottom, a direct order against the registrars is neither permissible nor necessary to effectuate the injunction—after all, "the registrars . . . [still]

---

[2] To be clear, the Court does not suggest that mere notice and inaction would be sufficient to render the registrars "in active concert or participation" with VTS LLC. On this point, the Court tends to agree with the rationale of the Seventh Circuit in *Blockowicz v. Williams*. *See* 630 F.3d at 568 ("[T]he fact that Xcentric is technologically capable of removing the postings does not render its failure to do so aiding and abetting. . . . [M]ere inactivity is simply inadequate to render them aiders and abettors in violating the injunction.").

may not take any actions to impede or otherwise interfere with [the injunction]." *See Curtis*, 45 F. Supp. 3d at 1204; *see* ECF 14 at 2 (citing *Curtis* as authority supporting Verizon's motion).

As to the final term of Plaintiff's proposed injunction, which targets website hosting providers, the Court denies that request as well. Plaintiff's counsel acknowledged in the December 12, 2023 hearing that this relief is unnecessary so long as there is a way to transfer the domains, which there certainly is under the Court's injunction described above. But even without that concession, the Court would still deny an injunction against these nonparties as inconsistent with the ACPA (which does not mention "website hosting providers"), Rule 65(d)(2), and general principles prohibiting injunctions against nonparties, for the same reasons already listed.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment, ECF 9, is **GRANTED IN PART** and **DENIED IN PART.** The Court will, as Plaintiff requested, dismiss the Second, Fifth, Sixth, and Seventh causes of action in Plaintiff's Complaint without prejudice. The Court will also award Plaintiff $450,000 in statutory damages and adopt the terms of Plaintiff's proposed permanent injunction, as modified above and as set out in the Order accompanying this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: January 4, 2024