**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VERIZON TRADEMARK SERVICES LLC <br><br> Plaintiff, <br><br> v. <br><br> VERIZON TRADEMARK SERVICES LLC, *et al.*, <br><br> Defendants. | Case No. 23-CV-2750 (JMC) |

**MEMORANDUM OPINION**

After successfully moving for default judgment against Defendant Verizon Trademark Services LLC (VTS LLC), Plaintiff Verizon Trademark Services LLC (Verizon) moves for default judgment against all remaining Defendants: VZStock.com LLC, Verizontrademarkservices.com LLC, and Matt McMan a.k.a. Stephen Neubauer a.k.a. John Tore (McMan) (together, Defendants). ECF 22. Verizon's motion remains unopposed given Defendants' continued absence from this case. Upon consideration of the motion, and for the reasons set out below, the Court **GRANTS** Verizon's Motion for Default Judgment.[1]

I.    **BACKGROUND**

The facts relevant to Verizon's present motion overlap almost entirely with those relevant to its motion for default against VTS LLC and are described in this Court's memorandum opinion dated January 4, 2024. ECF 20 at 1–3. It suffices to highlight the following: Verizon owns the trademark and trade name VERIZON and the trademark VZ, and Verizon alleges that the

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

Defendants (all of which are corporate alter egos of McMan) registered multiple infringing domain names and trade names as part of a scheme to mislead consumers, damage Verizon's marks, and extort Verizon. ECF 1 ¶¶ 10, 16, 23, 33, 41–56, 89–105; ECF 20 at 1–3. Of the sixteen infringing domains registered as a part of this scheme, ECF 1 ¶ 113, VTS LLC was responsible for nine, ECF 21 at 1–2. The remaining Defendants, according to Plaintiff, are responsible for the other seven. ECF 1 ¶¶ 12–14. Similar to the domains registered by VTS LLC, these seven domains do not "resolve to active websites," display "false information regarding Verizon and its business practices," or feature strange, barebones content such as a "photograph of a person (presumably Defendant McMan) holding an alleged Verizon stock certificate . . . and [a] link to Defendant McMan's website www.mcmans.com." ECF 1 ¶¶ 53, 82 n.4, 92.

Plaintiff filed suit on September 20, 2023. ECF 1. After Plaintiff had made unsuccessful attempts to serve the Defendants personally and via Registered Mail, this Court granted Plaintiff's motion for alternative service on November 27, 2023. ECF 11. Defendants were served consistent with that order on November 29, 2023, and were required to file their response by December 20, 2023, but did not do so. ECF 13. To this day, no Defendant has entered an appearance. On December 22 and 28, 2023, Verizon filed a request for entry of default. ECF 15; ECF 17; ECF 18. The Clerk of the Court entered default against VZStock.com LLC and Verizontrademarkservices.com LLC on December 28, 2023, ECF 16, and against McMan on December 29, 2023, ECF 19.

Verizon now voluntarily dismisses four of its seven claims against these Defendants and seeks a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against them on the following three causes of action: cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d); trademark infringement under the Lanham Act,

2

15 U.S.C. § 1114(1); and trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). ECF 22 at 8; ECF 1 ¶¶ 112–23, 132–43. Plaintiff seeks injunctive relief and statutory damages consistent with this Court's prior order of default against VTS LLC. *Compare* ECF 22-1 (Verizon's proposed order), *with* ECF 21 (Court order as to VTS LLC). Plaintiff seeks $350,000 in total statutory damages, i.e., $50,000 per domain name for the following 7 infringing domains:

 (1) VZSTOCK.COM;

 (2) VERIZONTRADEMARKSERVICES.COM;

 (3) VERIZONSTOCK.COM;

 (4) VERIZONWHISTLEBLOWER.COM;

 (5) VERIZONWHISTLEBLOWERS.COM;

 (6) VERIZONLEGAL.COM; and

 (7) VERIZONLEGALSERVICES.COM.

ECF 22-1 at 1–2.

 The Court entered default against VTS LLC on January 4, 2024, ECF 21, and is now prepared to do the same as to the remaining Defendants as requested in Plaintiff's current motion.

## II. DISCUSSION

 Upon default, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). In general, "[in] the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). Nonetheless, "[t]he

determination of whether a default judgment is appropriate is committed to the discretion of the trial court," *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011), and the Court must "make an independent determination of the sum to be awarded unless the amount of damages is certain." *Amrine Drywall Co.*, 239 F. Supp. 2d at 30.

Here, the Court finds that Plaintiff's complaint alleges sufficient facts to establish liability on the cybersquatting and trademark infringement claims for which it seeks default judgment, that Plaintiff's request for statutory damages in the amount of $50,000 per unlawful domain is reasonable, and that a permanent injunction is appropriate.

## A. Jurisdiction

As an essential preliminary matter, the Court finds that it has both subject matter jurisdiction and personal jurisdiction over the Defendants. Because Plaintiff's claims arise under federal trademark law, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). And even though these remaining Defendants (unlike VTS LLC) may reside in Michigan rather than the District of Columbia, ECF 1 ¶¶ 7–10, the Court is confident that the Defendants "meet[] the requirements of the District's 'long-arm' statute, and that exercising jurisdiction over [them] accords with the demands of due process." *Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1, 2 (D.D.C. 1996) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

Defendants' connection with the District of Columbia is such that they could have "reasonably anticipate[d] being haled into court []here." *See Burger King Corp. v Rudzewicz*, 471 U.S. 462, 474 (1985). The District of Columbia's long-arm statute extends to claims arising from a defendant "transacting any business in the District," D.C. Code § 13-423(a)(1), reaching "to the full extent allowed by the Due Process Clause" and thus personal jurisdiction is proper

where a defendant had "minimum contacts" with the forum, i.e., "purposefully availed himself of the privilege of conducting activities within the [District], thus invoking the benefits and protections of its laws." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013). McMan did just that. He formed multiple corporate entities, including one based in D.C., registered multiple VERIZON trade names in D.C., promoted his infringing domains in D.C.-based Craigslist advertisements, and sent frivolous "complaints" to government officials in D.C. in order to harass, coerce, and extort Verizon. *See* ECF 1 ¶¶ 10, 14, 17, 39, 59, 60, 65–68, 74, 91–103. McMan's conduct reflects "deliberate, voluntary, and significant connection[s] with the District" that establish personal jurisdiction. *See IMark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 155 (D.D.C. 2010). And since McMan is the sole owner, operator, member, registered agent, and contact of Co-Defendants Verizontrademarkservices.com LLC and VZStock.com LLC, neither of which conducts any bona fide business, *see* ECF 1 ¶¶ 10, 17, 39, these corporate co-defendants are nothing more than his "alter egos" and thus McMan's jurisdictional contacts are rightly imputed to them too, *see IMark Mktg. Servs., LLC*, 753 F. Supp. 2d at 149–50. The Court now turns to the merits.

## B.  Liability

To prevail on its ACPA claim, "Plaintiff must demonstrate that: (1) its trademark is a distinctive or famous mark entitled to protection; (2) Defendants' domain name is identical or confusingly similar to the Plaintiff's mark; and (3) Defendants 'register, traffic in, or use' a domain name with the bad faith intent to profit from it." *Hanley-Wood LLC*, 783 F. Supp. 2d at 152 (quoting 15 U.S.C. § 1125(d)(1)(A)). On the first two elements, Plaintiff has pled facts establishing that it owns the federally registered VERIZON and VZ mark, that the marks are entitled to protection, and that Defendants' domain names are confusingly similar. *See, e.g.*, ECF 1 ¶¶ 12–

15, 23–27, 29–38, 113–15. As to the final element, Plaintiff has alleged that Defendants have no rights in the VERIZON mark or the VZ mark, that Defendants' domains incorporate the marks in their entirety, that the infringing domains are not used in connection with any legitimate or bona fide business operations, and that Defendants continued to register additional infringing domains despite having no right to do so and knowing of Plaintiff's objections. *See, e.g.*, ECF 1 ¶¶ 55–57, 88–92, 100, 117–19. These allegations are sufficient to establish that Defendants registered, trafficked in, or used the infringing domain names with a bad faith intent to profit. *See* 15 U.S.C. § 1125(d)(1)(B)(i) (listing factors relevant to finding of bad faith). Plaintiff has therefore succeeded by default on the merits of its ACPA claim as to the remaining seven domain names.

To prevail on its trademark infringement and false designation of origin claims, Plaintiff must establish "that [it] owns a valid trademark, that [the mark] is distinctive or has acquired a secondary meaning, and that there is a likelihood of confusion." *Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012), *aff'd*, No. 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012). Verizon brings claims under both 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a), and both "are measured by the same standards under the Lanham Act, although the former section requires registration of the mark at issue, while the latter does not." *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 29 (D.D.C. 2008). As described already, Plaintiff has alleged facts establishing that it is the owner and registrant of the VERIZON mark and VZ mark, that the marks are distinctive and have acquired secondary meaning, and that Defendants' use of the marks is likely to cause confusion. *See, e.g.*, ECF 1 ¶¶ 12–15, 23–27, 29–38, 113–15. Verizon is thus entitled to a default judgment on its Lanham Act claims for trademark infringement and false designation of origin.

### C. Statutory Damages

Plaintiff has elected to seek statutory damages rather than actual damages, and this Court is authorized to award statutory damages from $1,000 to $100,000 for each unlawful domain name. 15 U.S.C. § 1117(d). "Courts have substantial discretion in awarding statutory damages," *Hanley-Wood LLC*, 783 F. Supp. 2d at 153, though in the default context courts are often "hesitant to apply the maximum penalty," *see, e.g.*, *Verizon Calif. Inc. v. OnlineNIC Inc.*, No. C 08-2832, 2008 WL 5352022, at *2 (N.D. Cal. Dec. 19, 2008). In fixing an appropriate award, courts consider factors including, but not limited to: the egregiousness or willfulness of the cybersquatting, the probable degree of consumer deception and harm, and the number of infringing domains registered in violation of the Plaintiff's (or others') intellectual property rights. *See, e.g.*, *Verizon Calif. Inc. v. Onlinenic, Inc.*, No. C 08-2832, 2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009); *Bittorrent, Inc. v. Bittorrent Marketing GMBH*, No. 12-cv-2525, 2014 WL 5773197, at *11–12 (N.D. Cal. Nov. 5, 2014). After reviewing the relevant factors, the Court finds that Verizon's request for $50,000 per domain is reasonable.

For the same reasons stated in the Court's Opinion as to VTS LLC on January 4, 2024, the Court finds that, while some factors may work in Defendants' favor, the cyberpiracy scheme of McMan (who controlled VTS LLC just as he did the remaining Defendants) "smacks of bad faith." ECF 20 at 7 (quoting *Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1203 (C.D. Cal. 2014)). The Defendants' blatant, unabashed, and repeated attempts to harm Verizon through cybersquatting justifies Verizon's request for $50,000 per domain. Thus, even in the context of default, where the Court and the Parties are deprived of the truth-seeking benefits of an adversarial proceeding, statutory damages in the amount of $50,000 per domain is reasonable in this case.

Verizon shall therefore be awarded a total of $350,000 in damages. The Court turns next to Plaintiff's request for injunctive relief.

### D.  Injunctive Relief

Plaintiff seeks a variety of equitable relief under the Lanham Act to prevent future infringement and effectuate prompt transfer of the infringing domains to Verizon. "In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the merits, (2) whether the plaintiff[] will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the injunction." *ACLU v. Mineta*, 319 F. Supp. 2d 69, 87 (D.D.C. 2004). Here, Plaintiff has succeeded on the merits by default, and trademark infringement generally, "by its very nature, carries a presumption of harm." *Hanley-Wood LLC*, 783 F. Supp. 2d at 151. The Court also finds that an injunction would not harm others and that the public interest is best served by protecting against further trademark violations. Plaintiff is therefore entitled to a permanent injunction as requested in its motion, but the Court now must determine what that injunction should look like.

Under the Lanham Act, this Court may issue an injunction "upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Verizon requests this Court to enjoin Defendants from using its marks online, registering its marks as corporate or business names, taking any action as to the infringing domain names (other than transferring them back to Plaintiff), representing any association or affiliation with Verizon in general, or aiding and abetting anyone in doing any of the above. ECF 22-1 at 2–3. Verizon further requests that Defendants cancel any registrations for infringing business names and transfer the infringing domains back to Plaintiff (and that the registrars be authorized to effectuate this transfer without Defendants' consent). *Id.* at 3–4.

Verizon's requests are consistent with this Court's prior order as to VTS LLC. *See* ECF 21. And since the remaining Defendants acted in concert with VTS LLC under the common control of McMan and in furtherance of the same coercive, unlawful, and bad-faith scheme, the Court does not hesitate to find that the terms of Plaintiff's proposed injunction are reasonable.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment, ECF 22, is **GRANTED.** The Court will, as Plaintiff requested, dismiss the Second, Fifth, Sixth, and Seventh causes of action in Plaintiff's Complaint without prejudice. The Court will also award Plaintiff $350,000 in statutory damages and adopt the terms of Plaintiff's proposed permanent injunction. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: January 12, 2024